UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARYL TODD NEVINS,

                Petitioner,

v.                                  CASE NO. 07-11951
                                  HONORABLE MARIANNE O. BATTANI

JAN E. TROMBLEY,

                Respondent.

_____/

### OPINION AND ORDER DENYING HABEAS CORPUS PETITION, BUT GRANTING IN PART A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner Daryl Todd Nevins has filed a *pro se* habeas corpus petition challenging his state court convictions for first-degree criminal sexual conduct. Respondent urges the Court through counsel to deny the petition. The Court agrees with Respondent that Petitioner's claims lack merit or are not cognizable on habeas review. Accordingly, the habeas petition will be denied. A procedural history and discussion follow.

### I. Background

Petitioner was charged in Ingham County, Michigan with three counts of criminal sexual conduct in the first degree. The charges arose from allegations that Petitioner digitally penetrated a friend's minor daughter during the last four months of 2001 and on the night of October 11-12, 2002. The state court summarized the evidence at trial as follows:

> According to the complainant, defendant, a close family friend, digitally penetrated her on several occasions when he was babysitting for her and her sister. The complainant was 12 years old at the time.  The last incident occurred when the complainant's mother took a short trip to the store. Defendant, who was extremely intoxicated, went into the complainant's bedroom, and, according to her testimony, put his finger in her "private area."  When the complainant's mother returned, she found defendant standing next to the complainant's bed with his hand under her blanket. The mother removed defendant from the bedroom, contacted the police, and took the complainant to the emergency room.  According to the examining nurse, the complainant had an abrasion on her hymen that, although minor, indicated some trauma to the area.

People v. Nevins, No. 260758, 2006 WL 2035679 (Mich. Ct. App. July 20, 2006).

Petitioner did not testify or present any witnesses.  The only evidence that he presented was a judgment of sentence purporting to show that he was confined in the Roscommon County Jail for six months beginning on April 9, 2002.  Defense counsel argued to the jury that there was reasonable doubt concerning Petitioner's guilt because the complainant did not call for help and initially did not disclose the abuse.   Defense counsel also pointed out that there was no DNA evidence, that the complainant's trial testimony was inconsistent in some respects with what she had told other witnesses, and that Petitioner was in jail when some of the claimed abuse occurred.

On December 9, 2004, an Ingham County Circuit Court jury found Petitioner guilty, as charged, of three counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(a) (sexual penetration of a person under 13 years of age).  The trial court sentenced Petitioner to three concurrent terms of twelve to twenty-five years in prison.  The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished, per curiam opinion, and on January 29, 2007, the Michigan Supreme Court denied leave to appeal.  See People v. Nevins, 726 N.W.2d 36 (Mich. 2007).

2

On May 4, 2007, Petitioner filed his habeas corpus petition pursuant to 28 U.S.C. § 2254. He alleges that (1) his statement to the police was coerced by a police officer's improper behavior, (2) the prosecutor used leading questions and suggested crucial facts to the complainant, and (3) the trial court erroneously admitted hearsay testimony.

## II.  STANDARD OF REVIEW

Habeas petitioners are entitled to the writ of habeas corpus only if they can show that the state court's adjudication of their claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A]n unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's

3

application of clearly established federal law was objectively unreasonable." Id. at 409.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam opinion) (emphasis in original). Furthermore, section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Bell v. Cone, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted).

### III. DISCUSSION

**A. Petitioner's Statement to the Police**

The first habeas claim alleges that the trial court erroneously denied Petitioner's motion to suppress his statement to the police.  Petitioner contends that his statement was involuntary because he was threatened with physical force before the interview and was confused by the detective's deceptive questioning tactics.  The Michigan Court of Appeals concluded on review of this claim that the trial court appropriately denied Petitioner's motion to suppress his statement.

**1. Clearly Established Federal Law**

The Supreme Court explained in Schneckcloth v. Bustamonte, 412 U.S. 218 (1973), that the test for the voluntariness of a confession is whether "'the confession [was] the product of an essentially free and unconstrained choice by its maker[.]  If it is, if he has willed to confess, it may be used against him.  If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his

4

confession offends due process.'" Id. at 225-26 (quoting Culombe v. Connecticut, 367

U.S. 568, 602 (1961)).  When determining whether a defendant's will was overborne in

a particular case, the Supreme Court

> has assessed the totality of all the surrounding circumstances-both the
> characteristics of the accused and the details of the interrogation.  Some
> of the factors taken into account have included the youth of the accused,
> his lack of education, or his low intelligence, the lack of any advice to the
> accused of his constitutional rights, the length of detention, the repeated
> and prolonged nature of the questioning, and the use of physical
> punishment such as the deprivation of food or sleep.

Id. at 226 (citations omitted).  Courts must "determine[] the factual circumstances

surrounding the confession, assess[] the psychological impact on the accused, and

evaluate[] the legal significance of how the accused reacted."  See id.

        For a confession to be free and voluntary, it "must not be extracted by any sort of

threats or violence, nor obtained by any direct or implied promises, however slight, nor

by the exertion of any improper influence."  Bram v. United States, 168 U.S. 532,

542-543 (1897) (quoting 3 Russ. Crimes (6th Ed.) 478).  "[T]he admissibility of a

confession turns as much on whether the techniques for extracting the statements, as

applied to this suspect, are compatible with a system that presumes innocence and

assures that a conviction will not be secured by inquisitorial means as on whether the

defendant's will was in fact overborne."  Miller v. Fenton, 474 U.S. 104, 116 (1985).  Not

all psychological pressures render a confession involuntary.  See Kordenbrock v.

Scroggy, 919 F.2d 1091, 1134 -35 (6th Cir. 1990) (Nelson, C.J., concurring).  "But as

law enforcement officers become more responsible, and the methods used to extract

confessions more sophisticated, [a court's] duty to enforce federal constitutional

protections does not cease. It only becomes more difficult because of the more delicate

5

judgments to be made." <u>Spano v. New York</u>, 360 U.S. 315, 321 (1959).

### 2. The State Court Hearing and State Court Decisions

Before trial, the trial court held an evidentiary hearing on Petitioner's motion to suppress his statement. Former Detective Mark Davis testified at the hearing that he left his business card at Petitioner's home and that Petitioner subsequently called him to arrange an appointment. They met for less than an hour on October 22, 2002, beginning at 1:25 p.m. He advised Petitioner of his constitutional rights. At his request, Petitioner read the first line on the waiver-of-rights form and placed his initials by that right. Davis then read the remaining rights to Petitioner and asked Petitioner to initial those rights. Petitioner also signed the form.

Petitioner informed Detective Davis that he had completed the eleventh grade, and Davis saw no indication that Petitioner did not understand what was happening, was unable to read, or was having problems communicating. Davis did not physically abuse Petitioner, nor threaten him with abuse. He also did not pressure Petitioner, but he did attempt to make Petitioner admit that he was not at fault because he had been drinking on the night in question.[1] The taped interview lasted forty-seven minutes, and it concluded when Petitioner asked for some time to think things over. Petitioner was not in custody, and he was permitted to leave after the interview.

Petitioner testified at the hearing that his boss drove him to the police department and waited in the parking lot while Detective Davis interviewed him in a small room. He

---

[1] At trial, Detective Davis denied pressuring Petitioner to give certain answers. He did admit, however, that he had suggested to Petitioner that the incident might have happened and that, if Petitioner had merely touched the complainant, he was not as guilty as someone who put his penis in a child.

6

claimed that Detective Davis did not read his constitutional rights to him, and he stated that he had not tried to read the form because he could not read well. He informed Detective Davis that he could not read or write and had trouble comprehending things. He signed and initialed the form where Davis told him to sign it. Before Detective Davis began taping the interview, Davis said that he would like to jump over the table and kick Petitioner's butt because he knew that Petitioner committed the crime. That comment made Petitioner feel nervous, upset, and so scared that he said whatever Davis wanted to hear just so that he could leave. He did not exit the room because he thought it would look bad if he just got up and left, although he knew that he was not going to be taken into custody. He was not intoxicated, under the influence of drugs, in ill health, or deprived of food, sleep, or medical attention. He was forty-one years old at the time, had completed the tenth grade, and pleaded guilty in three prior criminal cases. After the interview, Davis continued to "hound" him by suggesting that he should confess because everybody knew he did it.

The trial court noted at the conclusion of the hearing that Petitioner seemed to understand the purpose of the interview and the meaning of the question, "Do you understand your rights?" The trial court stated that Petitioner had more than a passing familiarity with court proceedings and constitutional rights. The court thought that the detective's testimony was accurate and that there was no coercion sufficient to vitiate a plea.

The Michigan Court of Appeals found no clear error in the trial court's factual determinations and deferred to the trial court's assessment of the credibility of witnesses and the weight of the evidence. The court of appeals concluded that the trial

7

court did not err in ruling that defendant made his statement voluntarily, because it did not appear that Petitioner's will was overborne or that his capacity for self-determination was critically impaired by Detective Davis's conduct.

### 3.  Analysis

This Court agrees that Petitioner's statement does not appear to have been coerced.  There was just one officer present during the interview, and the officer was wearing plain clothes.  The interview was short, and Petitioner was not in custody. Petitioner's tenth grade education is not a sufficient ground for finding that his statement was involuntary.  See United States v. Morris, 247 F.3d 1080, 1090 (10th Cir. 2001). Although "[l]ow intelligence level and lack of education must be taken into account when determining the voluntariness of confessions," United States v. Andaverde, 64 F.3d 1305, 1311 n.5 (9th Cir. 1995), Petitioner's alleged inability to comprehend things does not come close to being a severe handicap.  Furthermore, he had previous experience with law enforcement officials and a criminal background that included waiving his constitutional rights when pleading guilty.

The Court also finds that Detective Davis's interrogation techniques were not improper.  Detective Davis suggested to Petitioner that Petitioner was not telling the truth and that Davis was merely trying to determine Petitioner's intent on the night in question.  Davis asked Petitioner for "the real story" and whether it was possible that he pulled down the complainant's pants.  Some of the questions suggested that Petitioner might have improperly touched the complainant and other questions were designed to elicit an admission on the basis that Petitioner's conduct was not as bad as it could have been.  However, the questions were fairly straightforward, and even if they tended

8

to confuse Petitioner and make him nervous or frightened, "[m]ere emotionalism and confusion" do not necessarily render a confession involuntary.  Sullivan v. Alabama, 666 F.2d 478, 483 (11th Cir. 1982).  The interview techniques were not so confusing or upsetting as to be coercive.

Petitioner and Detective Davis gave conflicting versions of the facts at the evidentiary hearing, and Petitioner claims that the trial court erred in finding Detective Davis to be credible.  However, 28 U.S.C. § 2254(d) "gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  The state appellate court found that Petitioner voluntarily made a statement to the police.  This conclusion was objectively reasonable.

**B.  The Prosecutor's Conduct**

Petitioner alleges next that the prosecutor deprived him of a fair trial by asking leading questions of the complainant.  According to Petitioner, the prosecutor resorted to leading questions in an attempt to establish an element of the offense, namely, that Petitioner had penetrated the complainant.  The Michigan Court of Appeals stated on review of this issue that the prosecutor's questions were proper because they were leading only to the extent necessary to develop the fourteen-year-old complainant's testimony.

To prevail on a claim of prosecutorial misconduct, it is not enough to show that the prosecutor's conduct was undesirable or even universally condemned.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  The petitioner must demonstrate that the prosecutor's conduct infringed on a specific guarantee of the Bill of Rights or infected

9

the trial with such unfairness as to make the resulting conviction a denial of due process.  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  The complained-of conduct must be improper and flagrant, Broom v. Mitchell, 441 F.3d 392, 412 (6th Cir. 2006), cert. denied, 549 U.S. 1255 (2007), and "so egregious . . . as to render the entire trial fundamentally unfair."  Cook v. Bordenkircher, 602 F.2d 117, 119 (6th Cir. 1979).

In Michigan, leading questions may be used on the direct examination of a witness if "necessary to develop the witness' testimony," Mich. Rule of Evid. 611(d)(1), and "a considerable amount of leeway may be given to a prosecutor to ask leading questions of child witnesses."  People v. Watson, 629 N.W.2d 411, 422 (2001).  "[T]o warrant reversal, 'it is necessary to show some prejudice or pattern of eliciting inadmissible testimony.'"  Id. (quoting People v. White, 218 N.W. 2d 403, 406 (1974)).

Petitioner points to three instances where the prosecutor suggested to the complainant that Petitioner had placed his finger in her private parts.  (Tr. Dec. 7, 2004, at 18, 23-24.)  The complainant, however, had already testified that, during the October 2002 incident, she woke up when Petitioner put his hand under her underwear and by her private area.  (Id. at 18.)  The complainant also testified, without the help of leading questions, that Petitioner twice before had put his finger inside of her.  (Id. at 23.)  Furthermore, even though some questions tended to lead the complainant, they did not elicit inadmissible testimony.  The complainant was merely providing her version of the facts.

The Court concludes that the prosecutor's conduct was not improper or flagrant, and did not infect Petitioner's trial with such unfairness as to deprive him of due process.  Therefore, Petitioner is not entitled to relief on the basis of his prosecutorial-

10

misconduct claim.

**C. Hearsay**

The third and final claim alleges that the trial court erroneously admitted in evidence a hearsay statement made by the complainant's mother. According to the mother, the complainant stated shortly after the October 2002 incident that Petitioner "had been putting his hands in the wrong place and that this was not the first time that it . . . happened." The complainant also told her mother that Petitioner "had his hands in her underpants touching her where he shouldn't be touching her." (Tr. Dec. 7, 2004, at 67-68.)

The trial court admitted the mother's testimony under the exception to the hearsay rule for "present sense impressions." See Mich. Rule Evid. 803(1). Petitioner claims that the hearsay did not fall within this exception because it lacked corroboration and spontaneity. The Michigan Court of Appeals agreed that statements about certain events were not admissible under the exception for present sense impressions because the statements were not contemporaneous with the events they described. The court of appeals nevertheless determined that Petitioner was not entitled to relief, because the error was not outcome-determinative.

The contention that the trial court violated the Michigan Rules of Evidence is not a cognizable claim on habeas corpus review because "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). Petitioner implies that the hearsay testimony deprived him of his

11

right to confront the complainant, but the Michigan Court of Appeals correctly concluded that Petitioner's rights under the Sixth Amendment's Confrontation Clause were not implicated. The complainant testified at trial and was subject to cross-examination. The Confrontation Clause is not violated when the declarant is present at trial to defend or to explain an out-of-court statement. Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004).

## IV.  CONCLUSION

The state appellate court's rejection of Petitioner's claims did not result in an unreasonable determination of the facts or in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, the petition for writ of habeas corpus (Dkt. #1) is **DENIED**.

Reasonable jurists could debate the Court's resolution of Petitioner's first claim and conclude that the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). Consequently, a certificate of appealability may issue on Petitioner's claim that the trial court erroneously denied his motion to suppress his statement to the police. The Court declines to issue a certificate of appealability on Petitioner's second and third claims because those issues are not adequate to deserve encouragement to proceed further. Petitioner may proceed in forma pauperis on appeal because an appeal could be taken in good faith. Fed. R. App. P. 24(a)(4)(B).

s/Marianne O. Battani
MARIANNE O. BATTANI
Dated: September 29, 2009          UNITED STATES DISTRICT JUDGE

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the above date a copy of this Opinion and Order was served upon the Petitioner and the Respondent via U.S. Mail and/or electronically.

<u>s/Bernadette M. Thebolt</u>
Case Manager